# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLARET CAPITAL NOMINEES, et al., :
:
        Plaintiffs, :   CIVIL ACTION
:
  v. :   No. 09-cv-3532
:
JOHN BENETT, et al., :
:
        Defendants. :

## MEMORANDUM AND ORDER

**Joyner, J.**                                                           **January 25, 2010**

    This case is now before the Court on Plaintiffs' Motion for Summary Judgment (Doc. No. 8). For the reasons set forth below, Plaintiffs' Motion for Summary Judgment is GRANTED, and judgment is entered in favor of Plaintiffs in the amount of $3,449,000.

## Factual Background

    The factual background of this case has been set forth in detail in this Court's Memorandum of November 30, 2009 (Doc. No. 12), denying Defendants' Motion to Dismiss. We will, therefore, only provide a brief overview that will include any additional facts provided by the parties in their summary judgment filings.

    In the summer of 2008 the parties were involved in litigation before this Court. The parties settled the case and signed a Settlement Agreement, which gives rise to their present dispute. Pursuant to the Settlement Agreement and a Promissory Note, both signed on December 15, 2008, Defendants were to pay

1

Plaintiffs $5 million in $1 million installments. On December 23, 2008, the parties also executed an Intercreditor and Subordination Agreement ("ISA") between themselves and the Wilmington Savings Fund Society ("WSFS"). The ISA made all of the settlement loan documents subordinate to loans made by WSFS to Defendants. The ISA also stated that Plaintiff Claret Nominees "shall not exercise any of its enforcement remedies against [Devon IT] . . . for a period of sixty (60) days following written notice to [WSFS] of the event of default under the Settlement Loan Documents." (Ex. A to Defs.' Mem. Law Opp'n to Pls.' Mot. Summ. J. ¶3(c).)

In addition to these written documents, Defendants allege that the parties had an understanding that Defendants' payments to Plaintiffs were to come from royalty payments that IBM owed to Defendants pursuant to a July 2008 agreement between Defendants and IBM. In support of this assertion, Defendants note that IBM's royalty payments were scheduled to coincide with Defendants' payments to Plaintiffs, and that these royalty payments are explicitly referenced in the Settlement Agreement. (Id. ¶¶6, 12.)

Due to IBM's overestimation of its sales projections, however, Defendants did not receive the anticipated amount of royalties from IBM and were not able to pay Plaintiffs pursuant to the Settlement Agreement. Although Defendants did make their

first payment on time and in full, Plaintiffs and Defendants entered into an Amended Settlement Agreement on March 31, 2009, the date on which the second payment was due. Pursuant to this Agreement, Defendants were allowed to pay $562,000 on March 31, and were required to pay $1,438,000 along with $10,950 in interest the following month. After this, Defendants were to return to paying $1 million per month. Defendants, however, argue that the fact that Plaintiffs accepted $562,000 as payment in March is significant, as this is the exact amount that Defendants received from IBM in royalty payments for that month. Given this fact, Defendants assert that the course of conduct also demonstrates that Defendants' payments to Plaintiffs were predicated on IBM's payments to Defendants.

Defendants were unable to make the full payment required by the Amended Settlement Agreement in June. When Defendants tendered the amount that they had received from IBM in royalties, Plaintiffs rejected the deficient payment and initiated the instant suit. Due to an acceleration clause in the Amended Settlement Agreement, Plaintiffs seek damages in the amount of $3,449,000, which includes the balance remaining from the settlement as well as interest on the overdue amount. Defendants have admitted that this is the amount due in their Answer.

## **Standard**

When a party files for Summary Judgment, "[t]he judgment

sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making a summary judgment determination, all inferences must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In order to survive a motion for summary judgment, the non-moving party cannot rely solely on the unsupported allegations found in the pleadings. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the non-moving party must raise more than "some metaphysical doubt" as to a material fact. Matsushita, 475 U.S. at 586. In making a decision as to whether there is a "genuine" issue of fact, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). When looking specifically at breach of contract cases, summary judgment cannot be granted unless the language of the contract is unambiguous. Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999).

## Discussion

As discussed in this Court's Memorandum denying Defendants' Motion to Dismiss, Pennsylvania law will apply to this breach of

4

contract dispute.  To establish breach of contract under Pennsylvania law, the plaintiff must demonstrate the existence of a contract, a breach of that contract, and damages resulting from the alleged breach.  <u>Galko v. Harleysville Pennland Ins. Co.</u>, 71 Pa. D. & C.4th 236, 253 (Pa. C.P. Lackawanna County 2005).  An enforceable contract requires a mutual agreement between the parties, the exchange of consideration, and that the agreement's terms are delineated with a sufficient degree of clarity.  <u>Weavertown Transp. Leasing, Inc. v. Moran</u>, 834 A.2d 1169, 1172 (Pa. Super. Ct. 2003).

The parties in this case do not dispute the existence of the contract, nor do they dispute that Plaintiffs have been harmed.  Defendants, however, contest both the existence of a breach, as they allege that there is an implied term in the contract that excuses their failure to pay, and Plaintiffs' ability to bring suit, as they allege that the ISA created a condition precedent to suit that was not met.  Each of these contentions will be addressed in turn.

**Breach of Contract**

Plaintiffs claim that Defendants clearly breached the Settlement Agreement and Amended Settlement Agreement.  They note that Defendants were required to pay $1,448,950 by June 30, 2009, and that Defendants did not make this payment.  Defendants do not deny this fact, but assert that there was an excuse for their

5

failure to do so.  Defendants argue that their duty to pay was implicitly based on their receipt of funds from IBM, and that this was understood by the parties and is demonstrated by the course of conduct under these Agreements.  Because IBM did not provide the payments to Defendants that the parties expected, Defendants assert that they did not breach the contract so long as they forwarded to Plaintiffs all of the funds received from IBM.

When a party seeks to introduce evidence to the court of terms or interpretations of a contract that are not contained within the four corners of the contract itself, the parol evidence rule is potentially implicated.  In Pennsylvania, the first step in determining whether the parol evidence rule bars the admission of the evidence is determining whether the contract is fully integrated, and therefore represents the "entire contract between the parties."  Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004).  To make such a determination, the court should look at whether the contract appears complete, whether it provides the full set of obligations between the parties, and whether there is an integration clause in the contract.  Id.  Although an integration clause is not conclusive that the contract is the entire contract between the parties, it is "a clear sign" that the writing is final and complete.  Id.  "Once a writing is determined to be the parties'

entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." Id. at 436-37. There are two exceptions to this general rule. The first is that a party can seek to add a term to the contract if the party alleges that due to fraud, accident, or mistake, an agreed-upon term was omitted from the final written contract. Id. at 437. The second exception is that the evidence can be introduced if it attempts to clarify an ambiguity in the written contract. Id. Such an ambiguity may arise either from the choice of words in the contract itself or from extrinsic circumstances provided by a party. Id.

In the present case, the parol evidence rule prevents Defendants from introducing evidence that would establish that their duty to pay Plaintiffs was predicated on Defendants receipt of payment from IBM. First, the Settlement Agreement is an integrated contract. The Agreement is a formal document that lays out the obligations between the parties, and both appears and reads as if it is a final contract. In addition, the Settlement Agreement contains an integration clause, stating that the "Settlement Agreement, the Promissory Note and the Security Agreement contain and constitute the entire understanding and agreement between the Parties and cancel all prior or

7

contemporaneous oral or written understandings, negotiations, agreements, commitments, warranties, representations, and promises in connection herewith." (Ex. A to Defs.' Mem. Law Opp'n to Pls.' Mot. Summ. J. ¶11.) Although the Agreement was amended, this does not waive the integration clause, it merely alters several portions of the Settlement Agreement, as specifically provided by paragraph 6 of the Amended Settlement Agreement. Given the complete nature of the Settlement Agreement, the formal language contained in it, and the presence of an integration clause, this Court can reach no conclusion other than that the Settlement Agreement, Promissory Note, and Security Agreement, as altered by the Amended Settlement Agreement, represent the entire contract between the parties.

Given that the contract was integrated, Defendants can only seek to add a term to the Settlement Agreement if the term was left out due to accident, mistake, or fraud. Defendants allege none of these things. Defendants, instead, assert that the parties "understood" that Defendants' payments to Plaintiffs were contingent on IBM's payments to Defendants. This is precisely the type of evidence that is barred by the parol evidence rule. Defendants are seeking to add a term to the contract and make no allegations of fraud, mistake, or accident. This is not permitted.

Further, Defendants fail to allege ambiguity in the contract

to allow the introduction of extrinsic evidence for the purpose of interpreting the contract. Although Defendants point to the Mandatory Prepayment Clause at paragraph 6 of the Settlement Agreement as potentially providing the interpretation of the contract that they seek, this section is not ambiguous. There is nothing about the words used in this paragraph that could reasonably be interpreted to make the payments due to Plaintiffs contingent on IBM's payments to Defendants. Further, Defendants do not provide any extrinsic evidence of the circumstances surrounding the contract that lead us to believe that such an interpretation is even remotely reasonable. The Mandatory Prepayment Clause merely states that if Defendants receive royalty payments from IBM, these shall be "promptly paid to [Plaintiffs] as a mandatory prepayment of the next due installment." There is no reasonable way to interpret a clause that requires Defendants to immediately pay Plaintiffs if Defendants receive money from IBM to mean that Defendants need not pay Plaintiffs unless they receive payments from IBM. There is no ambiguity in this clause of the contract, and the circumstances provided by Defendants do not make the clause ambiguous. Defendants, therefore, are prevented by the parol evidence rule from introducing any extrinsic evidence to establish a meaning other than that provided by the plain language of the contract.

Finally, Defendants cannot use the course of conduct between the parties to create any ambiguity in the Settlement Agreement. Indeed, the course of conduct in this case demonstrates the opposite of what Defendants allege. Defendants claim that the course of conduct, specifically when Plaintiffs accepted a smaller payment in March of 2009, demonstrates that the parties understood that Defendants' payments to Plaintiffs were predicated upon IBM's payments to Defendants. Plaintiffs, however, did not merely accept a smaller payment in March of 2009, but, rather, signed an Amended Settlement Agreement. The fact that it was necessary to sign an Amended Settlement Agreement in this situation seems to provide virtually conclusive proof that the original Settlement Agreement did not make payments from Defendants to Plaintiffs contingent upon payments from IBM to Defendants; if the Settlement Agreement did make these payments contingent, there would have been no need to amend the Agreement. Defendants' argument, therefore, that the course of conduct under the Settlement Agreement creates an ambiguity in the Settlement Agreement is unpersuasive, and this extrinsic evidence also cannot be introduced to alter the terms of the written contract.

Because the parol evidence rule prevents Defendants from introducing the desired evidence, there is no genuine issue of material fact as to the breach of this contract. Both parties

10

agree that there was a contract and that Defendants did not make the payment as required by the written terms of the contract. As Defendants' evidence that would excuse the breach is barred, summary judgment in Plaintiffs' favor is appropriate on this issue.

**Affirmative Defense**

Although Plaintiffs have established that Defendants breached a contract, Defendants raise the ISA's 60-day waiting period before pursuing enforcement remedies as an affirmative defense to liability for the breach. Because the ISA was signed after the Settlement Agreement, the parol evidence rule is not implicated, and the ISA can be introduced to demonstrate that the parties have altered their legal rights and obligations following the signing of the Settlement Agreement. Plaintiffs, however, argue both that the filing of a suit is not an enforcement remedy and that this claim is moot as sixty days have now passed since notice was provided to WSFS.

First, we must determine whether the filing of this suit constitutes an "enforcement remedy" against Defendants, and, therefore, falls under the provisions of the ISA. Defendants assert that the filing of a suit for breach of contract is within the plain-language meaning of the phrase "enforcement remedy." Plaintiffs, however, argue that the term should be given its legal definition, and that the filing of a suit is not an

enforcement remedy but is simply seeking a judgment; no enforcement can be sought, Plaintiffs claim, until a judgment is obtained. Plaintiffs, therefore, argue that the ISA does not require notice to WSFS before filing a suit, but rather only requires that notice be given before Plaintiffs try to enforce the judgment coming from the suit.

Both of these interpretations appear reasonable. On the one hand, terms in a contract are generally given their specialized or legal meaning. Mellon Bank v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1013 (3d Cir. 1980). In legal terminology there is a distinction between obtaining and enforcing a judgment, and under this definition, the filing of a suit would not constitute an enforcement remedy. On the other hand, given the placement of the clause in the contract, it would be reasonable to conclude that the term requires notice before an attempt to enforce the contract, and not only the attempt to enforce a judgment. Filing a suit for breach of contract is certainly seeking to enforce a contract, and under this definition notice would be required before the suit was filed. As both Plaintiffs and Defendants raise reasonable alternate interpretations of "enforcement remedy," the term is ambiguous. Summary judgment on this issue, therefore, would be inappropriate.

Summary judgment on this issue, however, is not necessary as it is moot. "[F]ederal courts are without power to decide

12

questions that cannot affect the rights of litigants in the case before them." DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)).  If the court's ruling will not have an impact on the rights of the litigants in the case before it, Article III's case or controversy requirement is not met, and the court lacks jurisdiction to decide the issue.  Id.  This is precisely the situation that we face in the present case.  Although Plaintiffs did not provide notice to WSFS before filing the present suit, they have since done so, and WSFS has declined to exercise its option to cure Defendants' default.  If this case were to proceed to trial, therefore, and if a jury was to determine that Defendants' reading of the contract was the appropriate meaning of the term "enforcement remedy," Plaintiffs would merely be required to file the exact same complaint with this Court, and, for the reasons discussed in the previous section, would be entitled to Summary Judgment on that complaint at that point.  Even if, therefore, Plaintiffs failed to comply with a prerequisite for suit, they have since complied, sixty days have passed, and enforcing the provision of the ISA would have no impact on these parties' legal rights and relations with regard to each other.  Defendants' affirmative defense, therefore, is moot.

Although there is ambiguity in the term "enforcement remedy"

contained in the ISA, and although this ambiguity cannot be settled by this Court on a summary judgment motion, Defendants' affirmative defense is moot, and this Court lacks jurisdiction to determine the meaning of the term "enforcement remedy." Regardless of the interpretation determined, sixty days have now passed since Plaintiffs provided notice to WSFS, and WSFS has declined to cure Defendants' default. A favorable ruling for Defendants on this issue, therefore, would not affect their liability or relationship with Plaintiffs, but would merely require Plaintiffs to immediately re-file their already-submitted Complaint and Motion for Summary Judgment. This defense, therefore, is moot and cannot remain as an issue for trial, even if this Court cannot grant summary judgment on the issue.

## Conclusion

Plaintiffs' Motion for Summary Judgment is granted. The parties do not disagree that a contract existed, that Defendants failed to comply with the terms of the written contract, and that Plaintiffs were damaged by this failure. Defendants' attempts to introduce evidence to alter the terms of the written contract are blocked by the parol evidence rule, making their attempt to establish an excuse for violating the contract unsuccessful. In addition, this Court lacks jurisdiction to determine whether Plaintiffs failed to comply with a prerequisite for bringing suit, as Plaintiffs have subsequently complied and Defendants'

14

contention has been mooted by the passage of time.  Defendants, therefore, have not demonstrated a genuine issue of material fact, making summary judgment appropriate in Plaintiffs' favor.